A97A2425. IN THE INTEREST OF R. F. T., a child.
(492 SE2d 590)

ELDRIDGE, Judge.

This is an appeal from an adjudication of delinquency. Appellant is a student at Heritage High School in Rockdale County. At the time of the incident in question, she was on "indefinite" juvenile probation for a 1995 adjudication of delinquency based upon her possession of marijuana and methamphetamine. On March 21, 1997, after another student reported that appellant had been selling drugs on campus, appellant's backpack was searched by the high school principal;[1] found was a small green and white plastic container with three single-edged razor blades inside.

Thereafter, a delinquency petition was filed for a violation of

---

[1] The propriety of the search has not been contested.

OCGA § 16-11-127.1, carrying a weapon within a school safety zone. Appellant was adjudicated delinquent on May 28, 1997, for such violation. *Held*:

1. The issue presented for review is a narrow one, and it is *not* whether a single-edged razor blade may be used as a weapon. The issue is whether a single-edged razor blade constitutes a weapon *within the proscriptions of OCGA § 16-11-127.1*, the School Safety Zone Act. We find that it does not and reverse the juvenile court's determination.

OCGA § 16-11-127.1 (b) makes it a felony "for any person to carry to or to possess or have under such person's control while within a school safety zone . . . any *weapon* or explosive compound." (Emphasis supplied.) The statute provides a "laundry list" of weaponry that is specifically prohibited: " 'Weapon' means and includes any pistol, revolver, or any weapon designed or intended to propel a missile of any kind, or any dirk, bowie knife, switchblade knife, ballistic knife, any other knife having a blade of three or more inches, straight-edge razor, spring stick, metal knucks, blackjack, any bat, club, or other bludgeon-type weapon, or any flailing instrument consisting of two or more rigid parts connected in such a manner as to allow them to swing freely, which may be known as a nun chahka, nun chuck, nunchaku, shuriken, or fighting chain, or any disc, of whatever configuration, having at least two points or pointed blades which is designed to be thrown or propelled and which may be known as a throwing star or oriental dart, or any weapon of like kind, and any stun gun or taser[.]" OCGA § 16-11-127.1 (a) (2).

This statute was enacted pursuant to Ga. L. 1992, p. 1315, § 2, wherein the General Assembly intended to assign criminal penalties for the possession of *"certain* weapons" while at school. (Emphasis supplied.) Ga. L. 1992, pp. 1315, 1316. The Legislature has altered this statute three times since its enactment in order to further include certain items in the definition of "weapons," to exclude certain other items from the definition of "weapons," and to exclude certain people from the proscriptions of the Act. See Ga. L. 1994, p. 543, § 1; Ga. L. 1994, p. 547, § 1.

The time and effort our Legislature has spent in perfecting this law reflects the inherent difficulty in developing restrictions when education is involved. Clearly, many educational institutions encompassed within a "school safety zone" offer instruction in sports, art, mechanics, wood shop, metal shop, home economics which includes sewing and cooking, and other "hands-on" classes that necessarily require the presence of "tools" or "equipment" which could constitute "weapons" to some, e.g., cleats, screwdrivers, scissors, paring knives, awls, saws, seam rippers (i.e., razor blades), mat knives, forks, needles, pins, hammers, and nails. To ban such items would be to chill the

learning potential in our schools. Thus, the General Assembly had the task of balancing the chilling effect on classroom endeavors with the stated purpose for the Act, "[t]o provide measures and procedures to enhance school safety." Ga. L. 1994, p. 1012. Accordingly, the General Assembly clearly intended to specifically list those instruments that it decided should fall within the category of "weapons" and intended to leave out those instruments whose proper use would label them as "tools" or "equipment."

To this end, it appears obvious that a body politic which deliberately included in its definition of "weapon" a "nun chahka" with four additional synonyms therefor, and all forms of "oriental dart" certainly would have included an item as common as a razor blade, had they intended for that "tool" to fall within the proscribed weaponry of OCGA § 16-11-127.1 (a) (2).

Contrary to the position of the state, our decision *In the Interest of L. N. M.*, 222 Ga. App. 589 (474 SE2d 762) (1996) does not demand a different result, because *L. N. M.* is distinguishable from this case on both the facts and the law.

OCGA § 16-11-127.1 (a) (2) specifically lists a "straight-edge razor" as a prohibited weapon. In *L. N. M.*, this Court found that the retractable razor blade utility knife which was removed from the defendant at school could fall within the definition of such "razor." *In the Interest of L. N. M.*, supra at 590.[2] Thus, since this instrument *could* fall within the definition of a weapon prohibited by the statute, whether it did or not was a question for the trier of fact. On appeal, the factual determination of the juvenile court was not disturbed, because it was not shown to be clearly erroneous. *In the Interest of L. N. M.*, supra at 590, citing *State v. Wilson*, 220 Ga. App. 538, 539 (469 SE2d 804) (1996). However, in this case the single-edged blades, alone, cannot be considered to fall within the definition of a "straight-edge razor." Simply as a matter of common sense, the blade that goes into a razor is not the razor, itself.[3]

"It is an elementary rule of statutory construction that, absent clear evidence to the contrary, words should be assigned their ordinary, logical, and common meaning." (Citations and punctuation omitted.) *Fields v. State*, 216 Ga. App. 184, 186 (453 SE2d 794) (1995). As the instruments considered to be "weapons" are specifically described in OCGA § 16-11-127.1 (a) (2), under the historic prin-

---

[2] Citing Webster's Third New International Dictionary: "Razor: A keen-edged cutting instrument made with the cutting blade and handle in one (as a straight razor) or with the cutting blade inserted into a holder (as a safety razor or electric razor) and used chiefly for shaving or cutting the hair." (Emphasis supplied.)

[3] "Razor blade: A thin, sharp-edged piece of steel that can be *fitted into a razor*." (Emphasis supplied.) The American Heritage Dictionary, 3rd ed., p. 1503.

ciple expressum facit cessare tacitum,[4] it may be inferred that the Legislature intended to include only those types of instruments specifically mentioned therein. *Fields*, supra at 186; *State v. Peters*, 213 Ga. App. 352, 355 (444 SE2d 609) (1994). It follows, then, that the Legislature did not intend for OCGA § 16-11-127.1 (a) (2) to include a single-edged razor *blade* alone, without an accompanying implement for wielding the blade, in its proscribed list of weaponry.

Nor are we persuaded by the state's contention regarding the phrase of inclusion contained in the statute, "or any weapon of like kind": the state maintains that "a person of common intelligence understands that the language of 'any weapon of like kind' refers back to the *entire* list of named instruments, not the last instrument specifically named," and thus, encompasses a razor blade as a prohibited weapon "of like kind." (Emphasis in original.) We cannot agree.

"It is a well-recognized rule of construction that when a statute or document enumerates by name several particular things, and *concludes* with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named." (Emphasis supplied.) *Beavers v. LeSueur*, 188 Ga. 393, 403 (3) (3 SE2d 667) (1939). However, the statutory listing in question did not *conclude* with the referenced phrase, "or any weapon of like kind"; another weapon is named thereafter. Thus, this phrase of inclusion was not intended to refer to the entire list, and the principle of ejusdem generis does not apply.

In fact, a review of OCGA § 16-11-127.1 (a) (2) shows that several similar phrases of inclusion are made as a part of the statutory listing of weapons. Each of these phrases of inclusion refers to the category of "weapon" immediately preceding: (1) referring to guns, "or any weapon designed or intended to propel a missile of any kind"; (2) referring to knives, "or other knife having a blade of three or more inches"; (3) referring to clubs, "or other bludgeon-type weapon"; and (4) referring to the recent phenomenon of razored throwing discs, which come in a myriad of shapes and sizes, "or any weapon of like kind." If "any weapon of like kind" was intended to be a general term of enlargement referring to the *entire* list of weapons, it would render the other phrases of inclusion used in the list redundant surplusage. "Where possible, effect is to be given to all the words of a statute, and it is firmly established that courts should not interpret a statute so as to render parts of it surplusage or meaningless." (Citations omitted.) *Jordan v. State*, 223 Ga. App. 176, 181 (477 SE2d 583) (1996).

While, as the state urges, there is little doubt that a razor blade

---

[4] "That which is expressed makes that which is implied to cease." Black's Law Dictionary, 5th ed., p. 522; see also *Hinton v. State of Ga.*, 224 Ga. App. 49 (479 SE2d 424) (1996).

can be used as a weapon, that is not the question before this Court, nor was it the question before the court below. Unless or until the statute is changed legislatively, the single-edged razor blades involved herein are not "weapons" within the meaning of OCGA § 16-11-127.1 (a) (2), the School Safety Zone Act. Accordingly, we are constrained to hold that the juvenile court's finding to the contrary was clearly erroneous, and the appellant's adjudication of delinquency is reversed.

2. The petition in this case specifically charged appellant with a violation of OCGA § 16-11-127.1. While appellant's act as alleged in the petition, possession of the razor blades in the plastic container, does not rise to a violation of the state law as charged, her act may well have violated school rules or the conditions of her probation so as to support a determination that appellant is "unruly." By this opinion, we express no view as to whether appellant's conduct may justify further action deemed appropriate pursuant to OCGA §§ 15-11-2 (12) and 15-11-25 et seq.

*Judgment reversed. Ruffin, J., concurs. Birdsong, P. J., concurs in judgment only.*

DECIDED OCTOBER 2, 1997.

*Michael Terrell*, for appellant.
*Cheryl F. Custer, District Attorney, Robert G. Mikell, Assistant District Attorney*, for appellee.